UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| H. RICHARD DOZIER, | Civil Case No.: **10 CV 6423T** |
| Plaintiff, | |
| vs. | COMPLAINT |
| CORNING COMMUNITY COLLEGE, | |
| Defendant. | |

---

### PRELIMINARY STATEMENT

1. This is an action brought by Plaintiffs to challenge Defendant's creation of a discriminatory work environment, and for Defendant's endorsement of and/or participation in acts which constituted racial discrimination. Defendant has a pattern of discriminatory practices and a culture of tolerance of discrimination, history of hiring very few minorities, especially to administrative level positions, then making the work of those it does hire more difficult than for white employees in similar positions, then using the inability of its minority employees to live up to the impossible double standard as an excuse to fire them or force them to resign, thereby clearing the way for the hiring of white employees who are not scrutinized to nearly the same degree. Plaintiff contends that Defendant created a discriminatory work environment, allowed it to continue when confronted, fired employees due to their

Page **1** of **13**


race, ethnicity, or gender, and retaliated against one of the Plaintiffs for assisting in the investigation of a complaint of gender discrimination by a subordinate employee, to the detriment of the Plaintiffs and in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C § 2000e et seq.).

## JURISDICTION & VENUE

2. Plaintiffs bring this action pursuant to 42 U.S.C § 2000e-5(a) for violations of Plaintiffs' civil rights under the Civil Rights Act of 1964.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(4) (civil rights).

4. This Court has jurisdiction to declare the rights of the parties and to award any further necessary and proper relief pursuant to 28 U.S.C. § 2201 and 2202.

5. This Court has the authority to award injunctive and equitable relief under 42 U.S.C § 2000e(5)(g) as well as injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

6. This Court has authority to award costs and attorney's fees under 42 U.S.C. § 2000e(5)(k).

7. Plaintiffs have exhausted all necessary administrative requirements, having filed with both the New York State Division of Human Rights and the Equal Opportunity Employment Commission. Conciliation was unsuccessful and plaintiffs were

informed that they now had a right to bring suit in this Court. See the attached EEOC 'Right to Sue' notice.

## PARTIES

1. Plaintiff Dr. H. Richard Dozier, residing at 59 Summit St, Corning, NY 14830, was the VP/Dean of Student Development at Defendant Corning Community College from January 12, 2007 to May 22, 2009.

2. Witness Theresa James, residing at 7 Dennings Avenue, Beacon, New York 12508, was the Director of Workforce and Development at the Business Development Center of Defendant Corning Community College from May 4th, 2009 to January 20, 2010. She may be added later as a Plaintiff.

3. Witness Tory Kitching, residing at 900 Maple Avenue, Elmira, NY 14904, was a Staff Assistant in the Recruitment and Marketing Services Department at Defendant Corning Community College from August, 2007 to June, 2008.

4. Defendant Corning Community College (hereinafter 'CCC') is an educational institution which has students from New York and Pennsylvania, among other states. It may be served with process through its President, Dr. Floyd F. "Bud" Amann, Office # A208, 1 Academic Drive, Corning, NY 14830.

## STATEMENT OF FACTS RE: H. RICHARD DOZIER

5. Plaintiff Dr. H. Richard Dozier (hereinafter 'Plaintiff Dozier') is an African-American.

6. Plaintiff Dozier was the Vice President/Dean of Student Development for Defendant CCC.

7. The duties and authority of the position of Vice President/Dean of Student Development were clearly defined upon the arrival of Plaintiff Dozier.

8. Plaintiff Dozier was tasked by Dr. Amann with hiring someone to the position of Staff Assistant at the Recruiting and Marketing Services Department of Defendant CCC. Dr. Amann indicated to Plaintiff Dozier that he preferred to hire someone who was an Elmira, NY native and had a background in Admissions, to aid in recruiting people from the inner city portion of Elmira. A hiring committee was formed consisting of Ms. English and Karen Brown, though the ultimate hiring decision remained with Plaintiff Dozier.

9. The committee was supposed to recommend three candidates and allow Plaintiff Dozier to choose from among them, but instead it recommended only one candidate, another white female, who had a social work background, had never worked in admissions, and was not an Elmira native. Plaintiff Dozier did not accept their recommendation and instead hired Tory Kitching, who is an Elmira native, attended Mansfield College, and worked in Admissions while a graduate student there.

10. Members of senior staff, including, but not limited to Ms. English and Karen Brown, continuously complained about Tory Kitching and others hired by Plaintiff Dozier, and showed little to no respect for hiring and other decisions he made.

11. Karen Brown and Joan Ballinger, another member of senior staff, continuously questioned Plaintiff Dozier having lunch and meeting in his office with Tory Kitching and implied that such meetings were not proper.

12. At a meeting with senior staff, one member of senior staff in particular, Deborah Kelly (hereinafter 'Ms. Kelly'), displayed passive aggressive behavior toward Plaintiff Dozier whenever he spoke, including but not limited to: rolling her eyes, turning her back, and sending and receiving text messages.

13. Ms. Kelly's behavior was noted by others, including Ms. Ballinger and students on the Student Government Executive Council, who were alarmed enough to request a meeting with Dr. Amann.

14. No action was taken to correct Ms. Kelly's behavior toward Plaintiff Dozier.

15. Ms. Kelly and other members of senior staff continually implied to Plaintiff Dozier that they were his superiors and not his colleagues, and continually tried to redefine his position and authority, despite its being defined when he was hired.

16. Plaintiff Dozier received an employee evaluation containing many exaggerated or wholly falsified allegations of misconduct and incompetence. As it is voluminous, a portion of the evaluation along with Plaintiff Dozier's response is attached hereto as Exhibit A.

17. Plaintiff Dozier's predecessor, Mr. Jack Kelly, who is white, did not receive such treatment. Nor did other members of senior staff, who were all white.

18. On at least occasion, a racial slur was used against Plaintiff Dozier in a serious enough manner that Dr. Amann, the President of Defendant CCC, brought it to his attention and agreed to investigate it.

19. Dr. Amann met with Plaintiff Dozier in October of 2008 regarding the evaluation, and Dr. Amann there stated that he thought at least some of the things said in it were "very mean spirited". Dr. Amann gave Plaintiff Dozier two options: 1) Stay on and turn the situation around, which Dr. Amann did not believe could happen or 2) Resign, in which case Dr. Amann agreed to assist Plaintiff Dozier in finding employment elsewhere, because he was satisfied with Plaintiff Dozier's performance.

20. At their next meeting approximately a week later, both Plaintiff Dozier and Dr. Amann agreed that, due to the culture of the institution, the only option was for Plaintiff Dozier to resign, although he would be given time to find other employment.

21. In March of 2009, Dr. Amann informed Plaintiff that the College would be advertising his position.

22. In response to an email from Dr. Amann in early May of 2009, Plaintiff Dozier submitted his letter of resignation, effective June 30, 2009. Dr. Amann rejected this letter, stating that the Board wanted his resignation effective May 22, 2009. Plaintiff Dozier complied and resigned under this pressure from the position of VP/Dean of Student Development.

23. Plaintiff Dozier's replacement is a Caucasian male.

## STATEMENT OF FACTS RE: THERESA JAMES

24. Witness Theresa James is an African-American.

25. Witness Theresa James (hereinafter 'Ms. James') worked as the Director of Workforce and Development at the Business Development Center of Defendant CCC on May 4, 2009 to January 20, 2010.

26. Ms. James was the immediate supervisor of Dana LaFever, a Technical Assistant at the Business Development Center.

27. Mr. LaFever's previous supervisor was Brenda English (hereinafter 'Ms. English'). Ms. English is currently the Director of the Academic Workforce Development Center at Defendant CCC.

28. In August of 2009, Ms. James was required by Joan Ballinger, her supervisor, who had also been Ms. English's previous supervisor, to prepare Mr. LaFever's annual Performance Management Checklist for the partial year that she had been his supervisor. Joan Ballinger (hereinafter 'Ms. Ballinger') was and is the Executive Director of Workforce Development and Community Education at Defendant CCC.

29. Plaintiff Theresa James was further required, despite her objections, by Ms. Ballinger to issue a Corrective Action Plan for Mr. LaFever, despite her own positive review of his performance, based on Ms. English's negative evaluation of his performance prior to the arrival of Ms. James in May of 2009. Ms. James and Nanette Nichols issued this Corrective Action Plan to Mr. LaFever in October of 2009.

30. Upon information and belief, other employees in Ms. James's position or similar supervisory positions have not been required by Defendant CCC to issue employee evaluations which were contrary to their own observations.

31. Mr. LaFever filed an internal gender discrimination complaint against Ms. English and Ms. Ballinger in November of 2009.

32. Ms. James participated in the investigation of this complaint and was interviewed by the investigators, Barry Garrison and Nanette Nichols.

33. Ms. James did not feel that the issue of alleged gender discrimination had been adequately resolved and sent a memo dated January 19, 2010 to the President of Defendant CCC, Dr. Floyd Amann (hereinafter 'Dr. Amann'), stating her concerns See Exhibit B.

34. Dr. Amann offered no response to this memo other than to say that he preferred to respond through Nanette Nichols and Ms. Ballinger, one of the people with whom Ms. James took issue.

35. Ms. James was at other times required to do things that were not in her job description, and then criticized for not performing them or not performing them to the satisfaction of Ms. Ballinger and others.

36. Standards were made different for Ms. James than for white colleagues in the same or similar positions.  As an example, in an email dated January 15, 2010, Ms. Ballinger stated to Ms. James that it was standard for all training contracts to include a 10 day window during which Defendant CCC could cancel the contract, and this was given as a reason that Ms. Ballinger was hesitating to approve a contract Ms. James was working on.  However, in a contract between Defendant CCC and another of its business clients executed after the departure of Ms. James, a 5 day cancellation period

is specified. Copies of the email and the later contract are attached hereto as Exhibit C.

37. As another example of disparate treatment of Ms. James and her white coworkers: projects that Ms. James was working on or supported the funding of in her capacity as Director of Workforce and Development at the Business Development Center of Defendant CCC were frequently rejected, whereas projects that white colleagues and in similar positions supported were not. Copies of email exchanges regarding some of these projects that were rejected are attached hereto as Exhibit D.

38. In January of 2010, Ms. James was terminated from employment with the college. Upon information and belief, her replacement is Caucasian.

39. After Ms. James' termination from employment with Defendant CCC, Mr. LaFever was transferred to another office. He has since observed that the rigorous demands made on Ms. James regarding his supervision have not been made on his new, Caucasian supervisors.

## STATEMENT OF FACTS RE: TORRY KITCHING

40. Witness Tory Kitching (hereinafter 'Mr. Kitching') is an African American.

41. Mr. Kitching was a Staff Assistant at the Recruiting and Marketing Services Department at Defendant CCC from August, 2007 until June, 2008.

42. Mr. Kitching's immediate supervisor in this position was Karen Brown (hereinafter 'Ms. Brown'). Ms. Brown is currently the Director of Admissions in the Admissions Department at Defendant CCC.

43. At staff meetings, Ms. Brown would often praise the efforts of Carol Johnson, a colleague of Mr. Kitching's, in her recruitment efforts for Defendant CCC at the Salvation Army's food pantry, but never acknowledged Mr. Kitching's similar efforts in low income communities such as Hawthorne Court, Heritage Park, and Winser Park, despite Mr. Kitching's being told that those were important target areas for CCC to recruit in when he was hired.

44. Mr. Kitching was asked, as part of his job, to establish a relationship with the local minority churches. To do this, he met with the Alliance of Interdenominational Ministers (AIM), the predominantly minority church alliance in the area. For this, he was reprimanded by his superiors, and told he should have met with the affiliated Council of Churches, a predominantly white organization.

45. Mr. Kitching's was required to turn in weekly reports, whereas white employees in similar positions were only required to turn in monthly reports.

46. Ms. Brown and Ms. Ballinger criticized Mr. Kitchings for meeting in his office too often with minority students and not often enough with white students.

47. Mr. Kitching was made to feel guilty by Ms. Brown and Ms. English for meeting at lunch and other times with Plaintiff Dozier. They questioned what he and Plaintiff Dozier discussed each time they met. They did not similarly question Mr. Kitching's meeting with white employees of Defendant CCC.

48. Mr. Kitching was reprimanded on one occasion for attending a YWCA community event with Plaintiff Dozier.

49. Ms. English and Ms. Brown reprimanded Mr. Kitching for appearing on the TV News Show 'Senior Notebook' merely for stating that many students live with their grandparents.

50. Mr. Kitching complained to Ms. English about a female coworker slapping him on the buttocks, and Ms. English did nothing about it.

51. Mr. Kitching was asked to resign from the position of Staff Assistant in June of 2008 and acquiesced due to the negative and irreparable working environment.

52. Upon information and belief, a Caucasian female was hired to replace Mr. Kitching.

## COUNT I: CIVIL RIGHTS

53. Plaintiff realleges and incorporates by reference all of the preceding paragraphs in this complaint.

54. Defendant Corning Community College, through its officers and senior staff, discriminated against Plaintiff Dr. H. Richard Dozier with respect to the terms, conditions, and privileges of his employment with the College on the basis of race, and thereby by committed an unlawful employment practice as defined in 42 U.S.C. § 2000e-2(a).

55. This discrimination is actionable under 42 U.S.C. § 2000e-5(f) and the court may grant the relief requested below under 42 U.S.C. § 2000e-5(g).

## COUNT II: CIVIL RIGHTS (DISPARATE IMPACT)

56. Plaintiff realleges and incorporates by reference all of the preceding paragraphs in this complaint.

57. Defendant Corning Community College has tended to unlawfully discriminate against African-American employees by using employment practices that create a disparate impact on the basis of race, which has resulted in unlawful discrimination against Plaintiff Dozier, in violation of 42 U.S.C. § 2000e-2(k)(1)(A)(i).

58. These practices are actionable under 42 U.S.C. § 2000e-5(f) and the court may grant the relief requested below under 42 U.S.C. § 2000e-5(g).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully prays for the following relief:

1. An order preliminarily and then permanently enjoining Defendant and its officers, agents, affiliates, subsidiaries, servants, employees, and all other persons or entities in active conceit or privity or participation with them, from unlawfully retaliating against any of the Plaintiffs or any witnesses in any way for participating in this suit or any other complaint of discrimination against the college.

2. A declaration that Defendant's actions violated Plaintiffs' civil rights.

3. Monetary damages to Plaintiff Dozier in the amount of $1,400,000.00 as a result of the loss of his employment and damage to his reputation

4. Punitive damages in the amount of $4,200,000.00 as a result of the pervasive environment of racial discrimination Defendant CCC has created.

5. Reasonable attorney's fees and costs.

6. Any other relief to which Plaintiff may be entitled

Dated: 7/21, 2010

STATE OF NEW YORK     )
                      ):ss
COUNTY OF STEUBEN     )

    **DR. H. RICHARD DOZIER**, being duly sworn, deposes and says that deponent is the Plaintiff in the within action; that deponent has read the foregoing Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters deponent believes to be true.

                                                  H. Richard Dozier      Plaintiff

Sworn to before me this 21 day of July, 2010.

_____
Notary Public

**Susan BetzJitomir**
Notary Public State Of New York
No. 02BE6069504
Commission Expires 02-04-00
Qualified in Schuyler County

Respectfully submitted,

_____
Susan BetzJitomir, Esq.
Attorney for Plaintiff
50 Liberty Street
Bath, New York 14810
Telephone: (607) 776-4200
Fax: (607) 776-4212

lawyer@betzjitomir.com

# EXHIBIT A

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | H. Richard Dozier<br>59 Summit St.<br>Corning, NY 14830 | From: | Buffalo Local Office<br>6 Fountain Plaza<br>Suite 350<br>Buffalo, NY 14202 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2010-00428 | Nelida Sanchez,<br>Investigator | (716) 551-4442 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

**- NOTICE OF SUIT RIGHTS -**
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

/s/ John E. Thompson

John E. Thompson,
Local Office Director

APR 2 3 2010

(Date Mailed)

Enclosures(s)

cc:  Floyd Amann, PhD
**President**
**CORNING COMMUNITY COLLEGE**
59 Summit St.
Corning, NY 14830

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Buffalo Local Office

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4442
TTY (716) 551-5923
FAX (716) 551-4387

H. Richard Dozier, Ph.D.
59 Summit Street
Corning, New York 14830

Re:   EEOC Charge No.: 525-2010-00428
      Corning Community College

Dear Mr. Dozier:

The EEOC has concluded its inquiry into your allegations of discrimination. Under the Equal Employment Opportunity Commission's (EEOC) charge prioritization procedures, we focus our resources only on those charges that are most likely to result in findings of violations of the laws we enforce. In accordance with these procedures, the EEOC has evaluated this Charge based on the information you provided. The evidence shows that the EEOC has no jurisdiction to further investigate your allegations because the Charge was untimely filed.

The EEOC has a 300 day timely limit, which means we may only investigate allegations of discrimination which have occurred within 300 days from the date a Charge is filed. You filed your Charge on March 31, 2010. The most recent date of harm was May 22, 2009. Your timely date passed at the latest in March 18, 2010. Therefore, your Charge is untimely filed and the EEOC has no jurisdiction.

However, the New York State Division of Human Rights (NYSDHR) also protects individuals against discrimination based on race, and may have jurisdiction to investigate your allegations. Your claim will be forwarded to the NYSDHR. You should be contacted by that Agency.

Your Determination/Notice of Right to Sue is enclosed. This determination is final. If you wish to pursue this charge, you may file in Federal District Court within 90 days of the receipt of the enclosed Notice of Right to Sue.

On behalf of the Commission,

Date: APR 2 3 2010

John E. Thompson, Director
Buffalo Local Office

Enc: Dismissal and Notice of Right to Sue



**U.S. Equal Employment Opportunity Commission**
**Buffalo Local Office**

6 Fountain Plaza
Suite 350
Buffalo, NY 14202
(716) 551-4442
TDD: 1-800-669-6820
FAX (716) 551-4387
1-800-669-4000

Respondent: CORNING COMMUNITY COLLEGE
EEOC Charge No.: 525-2010-00428
FEPA Charge No.:

April 23, 2010

H. Richard Dozier
59 Summit St.
Corning, NY 14830

Dear Mr. Dozier:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

- [X]  Title VII of the Civil Rights Act of 1964 (Title VII)
- [ ]  The Age Discrimination in Employment Act (ADEA)
- [ ]  The Americans with Disabilities Act (ADA)
- [ ]  The Equal Pay Act (EPA)
- [ ]  The Genetic Information Nondiscrimination Act (GINA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]  Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

While your charge is pending, please notify us of any change in your address, or where you can be reached if you have any prolonged absence from home. Your cooperation in this matter is essential.

Sincerely,

Nelida Sanchez
Investigator
(716) 551-4442

Office Hours: Monday – Friday, 8:30 a.m. - 5:00 p.m.
www.eeoc.gov

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The United States District Court for the Western District of New York is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates. (716) 551-4211
  http://www.nywd.uscourts.gov

- The United States District Court for the Northern District of New York is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's pro Se Attorney has offices at 10 Broad Street in Utica New York. (315) 234-8500
  http://www.nynd.uscourts.gov

- The United States District Court for the Southern District of New York is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester. (212) 805-0136
  http://www.nysd.uscourts.gov

- The United States District Court for the Eastern District of New York is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk. (718) 613-2600 http://www.nyed.uscourts.gov

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within 90 days of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)