# EXHIBIT B

Fw: Issue at work - Yahoo! Mail                                                            Page 1 of 1

YAHOO!. MAIL Classic

RECEIVED JAN 2 0 2010 BY:

**Fw: Issue at work**                                                Wednesday, January 20, 2010 12:51 PM
From: "Theresa James" <tjames1981@yahoo.com>
To: pambonning@yahoo.com
2 Files (35KB)

 
Amann re...   Office of ...

--- On **Wed, 1/20/10, Theresa James** <*tjames1981@yahoo.com*> wrote:

> From: Theresa James <tjames1981@yahoo.com>
> Subject: Issue at work
> To: lawyer@betzjitomir.com
> Date: Wednesday, January 20, 2010, 11:10 AM
>
> Hello Mrs Betzjitmoir
>
> There are some new developments dealing with my work environment at CCC.  Attached you will find a memo i sent to the President concerning some ongoing issues..  Also attached is the response i have received so far.
> Theresa James

http://us.mc343.mail.yahoo.com/mc/showMessage?sMid=0&filterBy=&.rand=598722350...   1/20/2010

Theresa -

I have received your memorandum and prefer to respond through Joan Ballinger or Nan Nicholas.

Thank you for sharing your perspective on this difficult matter.

FA

----- Original Message -----
From: Theresa James
Date: Tuesday, January 19, 2010 8:36 am
Subject: Office concerns
To: amann@corning-cc.edu
Cc: nicholas@corning-cc.edu

> Dear Dr. Amann
>
> I do hope this email reaches you in good health. Attached you
> will find a
> confidential memorandum.
>
>
>
> Theresa James
>
> Director, Office Workforce Development
>
> Corning Community College
>
> 24 Denison Parkway West
>
> Corning, NY 14830
>
> Tel: 607 937 6879
>
> Fax: 607 937 6844
>
> Email: tjames2@corning-cc.edu

**Office of Workforce and Development**

# Memo

**To:** Dr Floyd Amann, President of Corning Community College
**From:** Theresa, James, Director of Workforce and Development
**CC:** Nan Nicholas, Director of Human Resource
**Date:** 1/20/2010
**Re:** Hostile Work Environment

---

I have serious concerns about the environment I am expected to function as the Director of Workforce and Development at the Business Development Center. These concerns are centered around my supervision of Mr. Dana LaFever, our department's program assistant. My immediate supervisor, Ms. Joan Ballinger seen intent on relentlessly on harassing or creating the appearance of wrong doings. These efforts have resulted in a lot of wasted time because I have to deal with these continuous petty office issues when I could be dealing with important issues of the Workforce Development Office.

When I first began my employment with Corning Community College May 4th, 2009, I was told by Ms. Ballinger, that Dana LaFever is going to be my most challenging employee. Initially, I was concerned about Dana's work performance especially after he advised me that he is no longer allowed to do business with the Chemung County business clients with whom he had developed productive relationships. At that I time told Dana that he should not allow these situations to affect his performance because change do occur in workplaces and that the only thing constant is change. I further told him now that the Business Development Center has been assigned a new business territory, Steuben and Schuyler County, we must move on and do the best we can to create new corporate accounts.

In August, 2009, I was told by Ms. Ballinger that I am required to prepare Dana LaFever's annual CCC Performance Management Checklist for the time he has been under my supervision. She also told me that since Dana performed poorly under Brenda English's supervision, it is my responsibility to place him on a 90 day corrective work plan. Because of my concerns and reservations about this request, I consulted with other professionals in the field of labor relations and human resource and learned that it was inappropriate and not legal for me to issue a corrective plan for an employee who had performed positively under my supervision. What I believed

1

should have occurred is that Ms English, Dana previous supervisor should have done the corrective work plan herself, and then ask me to ensure that Dana follow the plan. Nonetheless, despite my reservations, I complied with Ms Ballinger's request by drafting an evaluation for the time I supervised Mr. LaFever and the corrective work plan which should have been done by Ms English. Days later, Ms Ballinger and I met to discuss the evaluation. During this meeting, she informed me that my evaluation was written on a positive note and that I must rewrite it to reflect Ms. English's negative evaluation in order to justify the corrective work plan. I told her that I needed time to think about it. Again, I checked with my labor relations colleagues to determine if it is legal to do so. I then followed up with Ms. Ballinger informing her that I could not do what she requested. I further told her that not only would it be wrong but unethical for me to change Dana's evaluation since he had already received a copy of my positive evaluation. On Oct 6th, 2009 Nan Nicholas, our Human Resource Director and I met with Mr. LaFever to issue the corrective work plan.

In November, 2009, Dana filed an internal gender discrimination complaint with Corning Community College. Since the case was filed I have spent numerous hours in meetings with Joan on issues involving Mr. LaFever. These issues concern Mr. LaFever allegedly not following college procedures such as:

- Executing a contract for the Breakfast Club Seminars
- Recruitment of a full-time faculty to teach the MasterCam course during the Winter Break
- Invoice request from Economic Opportunity Program for billing purposes

My investigation has revealed that Dana did not do anything wrong but did what was done in the past. In other words, if college procedures were not being followed as Joan claims then this has been happening for several years the alleged non-compliance procedures did not just start.

One of my biggest concerns is Ms. Ballinger is constantly scrutinizing all things related to Mr. LaFever though he is under my supervision. It appears to me that even the smallest issues are blown out of proportion to apparently harass Mr. LaFever. I am caught in the middle of this because I now have to stop what I am doing to investigate the alleged problem, only to find out it is a non-issue and Dana did not do anything different prior to filing his case. In the mean time, I have wasted valuable time that could have spent on trying to generate revenue which is critical for the survival of the Department. If this witch hunt continues and my employee, Dana LaFever decides to continue his claim and file charges with regards to a hostile work environment, I will have no other alternative but to support his charges because what is going on is unnecessary and destructive to our operations

I had optimistically hoped that what I perceive to be a hostile work environment would end following the Holiday break and I could begin to seriously concentrate on my job

- Page 2

responsibilities. However, this has not been the case. I am therefore forced to send this memorandum to you with the hope that you can intercede.

I am available to discuss this on-going problem at your convenience.

● Page 3